# City of Lancaster *versus* Kissinger.

1. A teamster was driving through the streets of a city a pair of horses attached to a platform wagon, which was without sides or hind tail gate, and was loaded with loose boxes containing tobacco. He was seated on one of the. boxes. In crossing a defective gutter, which he had crossed before, but which was too deep for the size of its approaches, and much deeper than it should have been according to the instructions of the city regulator, the jar threw him from his seat, and he fell between the horses and astride the tongue. The horses did not run and he walked along. In trying to grasp the lines he caught •upon one side and drew the horses over to a fence, the cracking of which

[City of Lancaster v. Kissinger.]

frightened them and they commenced to run.  He could not keep up, tripped and fell, and getting under the wagon received injuries which caused his death. *Held*, in an action by his widow against the city for damages, the above facts having been given in evidence by plaintiff and being undisputed, that it was error to decline to instruct the jury that they must be satisfied that the proximate cause of the injury was the defective gutter, and that if they believed the testimony, plaintiff could not recover.

2. The court may be asked to instruct the jury upon the admitted facts of the case.

3. The rule of Hoag v. The Railroad Co., 4 Norris, 293; Railroad Co. v. Kerr, 12 P. F. Smith, 353, and Railroad Co. v. Hope, 30 P. F. Smith, 373, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been seen by the wrongdoer as likely to follow from his act, followed.

4. Hey v. The City, 31 P. F. Smith, 44, distinguished.

5. One who is seated upon a wagon in an insecure position, and driving across a gutter which he knows to be defective, is bound to use such care as a prudent man would use under such circumstances.

6. It was error to exclude from the jury evidence going to show that the person injured had many times, within six weeks before his death driven over the same gutter, with the same wagon, loaded in the manner described, without accident.

7. It is better, when a point can be affirmed without qualification, that it should be so affirmed, since by difference in language its force is weakened, and the jury are apt to be misled.

8. It is the duty of plaintiff, seeking to recover where the *gravamen* of the action is the alleged negligence of the defendant, to show a case clear of contributory negligence on his own part.

ERROR to the Court of Common Pleas of *Lancaster County.*

Case by Mary Kissinger against the city of Lancaster to recover damages for the death of her husband, Henry M. Kissinger, and the father of her child, Harry Kissinger, caused, as alleged, by the negligence of its officers and employés in properly constructing and keeping in repair a certain gutter in the said city.

Plea, not guilty.

Upon the trial the following facts appeared:

Henry M. Kissinger was a teamster, and on the 22d of July, 1878, the day on which the accident occurred resulting in his death, was engaged in hauling tobacco with a pair of horses and what is known as a platform wagon,—a wagon without sides or hind end gate.  On this wagon were nine boxes of tobacco,—in size three by four feet,—five on the bottom and four others on top of these.  The lower boxes were not fastened.  Old bolts and nails were used on top of the lower boxes to prevent the upper boxes from slipping. The upper boxes were laid on these bolts and nails.  Kissinger sat on the front lower box with his feet on the front gate.  The portion of the box upon which he sat measured about two feet.  He had driven a similar load earlier in the day over the gutter in question with safety.

*J. A. Sprenger*, for the plaintiff, testified:

" I saw this man that fell off the wagon just as he turned into Cherry Alley from Orange Street. I was in front of him. As the wagon came down into the gutter the jar threw the man off. He slid off right down in between the horses astride of the tongue. He threw out his hands as he fell and tried to catch himself. He lit on his feet and walked along. The horses didn't run away. He tried to catch the lines. He caught one side and drew the horses over towards the fence, and when it began to crack the horses got frightened and commenced to run. He could not keep up, and tripped himself, and fell and got under the wagon. I saw the hind part of the wagon go over his body. The horses then ran on, and ran into my yard."

Kissinger died in consequence of the injuries he received.

The instructions of the city regulator were that the depth of the gutters should be six inches. The testimony of the witnesses for the defendant as to the depth of the gutter at the intersection of Orange Street and Cherry Alley varied, some saying that it was eight to ten inches deep, others that it was eleven. The testimony of the plaintiff's witnesses was that it was from fifteen inches to two feet in depth, abrupt in descent, steep, and dangerous. After the accident the street commissioner relaid the gutter, raising it three or four inches, and changed the slope. There was no evidence that at the time of the accident the gutter was out of repair. It was made in 1863 by the street commissioner.

*John M. Eshelman,* a witness for the plaintiff, was asked, upon cross-examination :

" Have you not a great many times driven over this gutter in the condition it was in July 22d, 1878, with one-horse wagons and with this same two-horse wagon with nine boxes of tobacco, in the manner you have described to the jury, to this same warehouse ?"

Upon objection by plaintiff, the question was disallowed, and the defendant excepted.

The witness was further asked :

"Did or did not Mr. Kissinger, many times within the month or six weeks preceding his death, drive over this same gutter, with the same wagon loaded in the manner you have described, to Skiles & Frey's warehouse, without accident either to the wagon or himself?"

Upon objection by plaintiff, the question was disallowed, and defendant excepted.

Counsel for defendant asked the Court below to charge the jury, *inter alia,* upon the following points :

2. It is the duty of plaintiff seeking to recover, where the *gravamen* of the action is the alleged negligence of the

defendant, to show a case clear of contributory negligence on his own part.

5. If the jury believe the testimony of J. A. Sprenger, that the deceased was uninjured until after he had crossed the gutter and drawn his horses against the fence, whereby they were frightened and ran away, and thus occasioned the accident, the plaintiff cannot recover.

6. The jury must be satisfied that the proximate cause of the injury to the deceased was a defective or negligently constructed gutter, otherwise the plaintiff cannot recover.

7. If the jury believe the uncontradicted testimony that the deceased was fully aware of the condition of the gutter, by reason of having driven over the same frequently, he was bound to exercise such care and caution as its alleged dangerous character should have suggested to him.

8. The uncontradicted testimony showing that if there was any defect in the gutter it was a defective grading of the same, for which a municipality is not responsible in damages to a citizen for an injury sustained by reason thereof, the plaintiff cannot recover.

The Court below, LIVINGSTON, J., answered these points as follows:

2. The plaintiff seeking to recover here must show negligence on the part of the defendant,—must show, to the satisfaction of the jury, that the alley or gutter was in a dangerous and unsafe condition for ordinary use and travel, which would be negligence; but the law presumes the injured party exercised ordinary care in crossing the gutter, and, therefore, the burden of proving carelessness or contributory negligence on his part rests on the defendant charging it, unless the proof presented by plaintiff in itself discloses and shows such negligence.

5 and 6. While the sixth point in ordinary cases would be affirmed, as the fifth and sixth were discussed as one, we will answer them together. And we refuse to affirm them as stated, and say: If the jury believe, from the evidence, that Henry Kissinger was not guilty of carelessness or contributory negligence on his part, before he was thrown from his seat in the manner stated down in between his horses, and also find, from the evidence, that the injury would not have occurred but for a defect in the construction or bad condition of the gutter, the defendant would be liable, although the proximate cause may have been a momentary loss of control, or inability to control his horses after being thrown off, not attributable to the fault of any one, while making an effort to get rid of the danger caused by his being thrown off his wagon in crossing the gutter.

7. The city is bound to have its streets and gutters in such order and condition as to be safe for public travel and passage with ordinary care. And if the jury believe, from the evidence, that this street, alley, and gutter were in such condition as to make them unsafe for such travel, then there was negligence on the part of the city, and if the deceased in crossing there used such care and caution as men engaged in such occupation as he was engaged in usually employ in crossing such gutters, plaintiff would be entitled to recover.

8. This point we refuse to affirm. It is not the law. The law requires the city to have her streets and gutters to be so graded and made as to be safe for public travel with ordinary care. It will not do for her to say the streets and gutters are improperly and negligently made, are in bad condition, but she is not liable for injury because the fault is in defective grading, and if the injured party had used very great and extraordinary care he might have avoided the accident. The city has no right to have her streets, alleys, and gutters in such unsafe and dangerous condition, either from defective grading, or defective construction, or want of repair, or safety from any other act of hers, as to require very great or extraordinary care and caution on the part of the traveller. If it does so grade, construct, or keep them, and injury or damage are caused thereby, it is liable.

Counsel for defendant excepted to these answers.

September 28th, 1880, verdict for the plaintiff for $1600, upon which judgment was entered.

Defendant then took out a writ of error, assigning, *inter alia*, as its first, third, and fourth and fifth grounds of error, the answers to its second, fifth and sixth, seventh and eighth points respectively, and as its eighth and ninth grounds of error, the rejection of the evidence as above set forth.

*Charles J. Landis* and *Samuel H. Reynolds* for plaintiff in error:

To say the law presumes the injured party exercised ordinary care in crossing the gutter, and therefore the burden of proving carelessness or contributory negligence rests on defendant, is in direct conflict with all the authorities on this subject: Waters *v.* Wing, 9 P. F. Smith, 211.

A party is to be governed, in the degree of care and caution he is to exercise, by the circumstances of the case, and nature of the difficulties and dangers he ventures to surmount: Railroad Co. *v.* McTighe, 10 Wr. 316 ; Railroad Co. *v.* Ackerman, 24 P. F. Smith, 265 ; McGrew *v.* Stone, 3 P. F. Smith, 436 ; Railroad Co. *v.* Stinger, 28 P. F. Smith, 219 ; Mulherrin *v.*

[City of Lancaster *v.* Kissinger.]

Railroad Co., 31 P. F. Smith, 366 ; Railroad Co. *v.* Feller, 3 N., 226.

A person who knows a defect in a highway, and voluntarily undertakes to test it when it could be avoided, can not recover against the municipal authorities for losses incurred through such defect : Wharton on Negligence, p. 363 ; Horton *v.* Ipswich, 12 Cush., 488 ; Wilson *v.* Charlestown, 8 Allen, 137 ; Lovenguth *v.* Bloomington, 71 Ill., 238.

If the proximate cause of damage be the plaintiff's unskilfulness, although the primary cause be the defendant's misfeasance, the former cannot recover : Flower *v.* Adam, 2 Taunt , 314.

A municipality, having power to grade its streets, is not responsible in damages for an injury sustained by a citizen in consequence of the particular grade adopted : 11 Casey, 324 ; Roberts *v.* Chicago, 26 Ill., 249 ; Duke *v.* Mayor of Rome, 20 Ga., 635.

*Charles Denues* and *M. Brosius* for defendant in error :

In regard to the first assignment of error, it is not necessary for the Court to answer a proposition in the very words submitted. It is enough if the answer be sufficiently full to be understood : Munderbach *v.* Lutz's Administrators, 14 S. & R., 220 ; Geiger *v.* Welsh, 1 Rawle, 349 ; Railroad Co., *v.* Rowan, 16 P. F. Smith, 393.

The reasoning which attempts to convict Kissinger of contributory negligence by showing that he knew the gutter was there, that it was a dangerous gutter, and he had crossed it once before, would lead to the alarming consequence that the greater and more obvious the defects in highways, the greater the city's immunity from liability for damages : Erie City *v.* Schwingle, 10 H., 384 ; Lower Macungie Township *v.* Merkhoffer, 21 P. F. Smith, 276 ; Pittston *v.* Hart, 8 N., 389.

To say that the city shall escape liability because Kissinger, when thrown into a position of extreme peril, did not exercise the wisest discretion and the most accurate and deliberate judgment in the means employed to release himself, is to shock reason and common sense : Hey *v.* Philadelphia, 31 P. F. Smith, 51.

The question of grading is not involved.

The opinion of the Court was delivered by PAXSON, J.

This action was brought in the Court below by Mary Kissinger against the city of Lancaster to recover damages for an injury to her husband resulting in his death. Henry M. Kissinger was a teamster, and on the morning of July 22d,

1878, was driving a pair of horses, attached to a platform wagon, through the streets of the city of Lancaster. The wagon was loaded with loose boxes containing tobacco, upon one of which Kissinger was seated. There were no sides to the wagon, and nothing to keep the boxes in place. In crossing a gutter, the jar threw Kissinger off his insecure seat. He fell between the horses and astride the tongue. The horses were not frightened, and continued walking. The deceased walked between them for a short distance What then occurred is best described by one of the plaintiff's witnesses: "He lit on his feet and walked along; the horses didn't run away; he tried to catch the lines; he caught one side and drew the horses over towards the fence, and when it commenced to crack, the horses got frightened and commenced to run; he could not keep [stand] up, and tripped himself and fell, and got under the wagon; I saw the hind part of the wagon go over his body."

The plaintiff contended that the gutter was defective and dangerous, and that this was the proximate cause of the accident. The character of the gutter has been settled by the verdict of the jury. It appears to have been too deep for the size of its approaches, creating a rude jolt or jar when a wagon crossed it. It had, however, been in existence for several years, and the undisputed evidence shows the deceased knew its condition, and had on the same morning crossed it with the same team, and a similar load, in safety.

The gutter does not seem to have been out of repair; the defect was in the grade. It was urged on behalf of the city, that it was not responsible for an accident the result of a defective grade, and the Court was called upon by defendant's eighth point to so instruct the jury. The Court declined to give such instruction, in which we cannot say there was error under the circumstances. There was really no question of grade before the jury. No evidence had been offered to show that the grade of the gutter had been fixed by the city authorities as it was found to be at the time of the accident. On the contrary, it appeared from the defendant's evidence, that six inches was the depth for gutters according to instructions issued by the city regulator. This gutter was much deeper; several witnesses say it was eighteen inches in depth. The city, after the accident, raised it several inches. Under the circumstances, Carr *v.* Northern Liberties, 11 Casey, 324, and other authorities cited by the defendant do not apply.

The two principal questions, as developed upon the trial, were, 1st, was the defective gutter the proximate cause of

the injury? and, 2d, was the deceased guilty of contributory negligence?

The first question was distinctly raised by the defendant's fifth and sixth points (see third assignment). The Court treated them as one, and answered them together. The instruction prayed for was declined. In this we think there was error. Both points should have been affirmed without qualification. It is true the affirmance of the defendant's fifth point would practically have withdrawn the case from the jury, for although its facts depended upon the testimony of J. A. Sprenger, yet Mr. Sprenger was one of the plaintiff's witnesses, and his evidence was not disputed. It was equivalent to a prayer for instructions upon the admitted facts of a case which has been expressly sanctioned in Hoag v. The Railroad Company, 4 Norris, 293, and other cases.

It is not always easy to correctly ascertain the proximate cause of an accident. The general rule applicable to such cases is, " that the injury must be the natural and probable consequence of the negligence ; such a consequence as under the surrounding circumstances of the case, might and ought to have been seen by the wrongdoer as likely to flow from his act:" Hoag v. The Railroad, *supra ;* Pennsylvania Railroad Co. v. Kerr, 12 P. F. S., 353; Same v. Hope, 30 Id., 373.

If we apply this principle to the case in hand, it will at once be seen that the gutter was not the proximate cause of the injury to the deceased. In crossing it he was thrown from his seat by the jolt occasioned thereby. But he was not injured by the fall, nor was he necessarily placed in peril. The horses were not frightened, and continued to walk. It is clear that but for his unfortunate blunder in pulling the horses up against the fence, the breaking of which alarmed them, he would not have been injured. There is no analogy between these facts and the case of a man who is in peril by reason of a runaway horse and a dangerous precipice, as in Hey v. The City, 31 P. F. S., 44. In such instances a man is not to be held to the exercise of the soundest judgment. The peril of such a position may well excuse an act which in cooler moments would be avoided. In the case in hand, if the horses had been frightened, and were running away, the mistake of pulling the wrong line would have had little significance. But for a man who was in no peril, with a quiet team, to pull it up against the fence until, by the breaking thereof, the horses were frightened and ran away, is quite a different matter. It was not, in the language of the rule above cited, " the natural and probable consequence " of the defective gutter.

The defendant attempts to hold the plaintiff to the rule that the deceased was bound to exercise care according to the circumstances; that inasmuch as he knew the dangerous condition of the gutter, " he was bound to exercise such care and caution as its alleged dangerous condition should have suggested to him." See fourth assignment. The Court below denied this proposition, and held the deceased was bound only to use ordinary care. This idea runs all through the rulings of the Court. As a general principle, ordinary care is undoubtedly the rule in the use of a public highway: Erie *v.* Schwingle, 10 Harris, 384; Lower Macungie Township *v.* Merkhoffer, 21 P. F. S., 276; Borough of Pittston *v.* Hart, 8 Norris, 389.

In this case much of the danger was the result of the insecure position of the deceased upon his wagon. His seat was but a loose box, and he had nothing to hold on to. He was liable to be thrown off by any sudden jar, whether caused by the gutter, a loose stone, or any inequality of the road. This is patent, and ought not to be ignored in the case. What was the proper measure of care under such circumstances? The same care that a man with a fixed load and a firm seat would be expected to take? Certainly not. Negligence is the absence of care according to the circumstances. If a man is driving an untamed horse, he naturally and properly exercises more care than if he was driving one entirely gentle. So of the road. If it is rough and out of repair, he exercises more care than if well graded and macadamized. The deceased knew of the defects in the gutter; he knew also that he had an unsafe seat; he was bound to use such care as a prudent man would have used under such circumstances, and the Court should have so instructed the jury.

It was error to exclude the evidence referred to in the eighth and ninth assignments. It was certainly competent to show that the deceased had driven across the gutter several times shortly before his death. It would be evidence of his knowledge of its condition.

The defendant was entitled to an unqualified affirmance of its second point. This is not denied, but it was argued that the answer of the learned judge was a substantial affirmance. It is much better when a point can be affirmed to say so. When affirmed with a qualification or in language different from the point itself, it is very apt to mislead the jury. It certainly weakens the force of the point with them.

There is nothing else in the case that requires discussion.

Judgment reversed.